UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                                                                  S1 15-cr-643 (PKC)

      -against-                                       ORDER ON
                                                                    STATEMENT OF
                                                               REASONS FOR SENTENCE

GARY HIRST,

                             Defendant.
-----------------------------------------------------------x
CASTEL, U.S.D.J.

        Defendant Gary Hirst stands convicted of one count of securities fraud, one count of wire fraud, one count of conspiracy to commit securities fraud, and one count of conspiracy to commit wire fraud. Set forth below is the statement of reasons for the sentence to be imposed on him.

        In sentencing the defendant I have considered the presentence report, recommendation and addendum and all of the sentencing submissions referenced at the outset of this proceeding. I have considered the thoughtful presentations by Ms. Harris and Mr. Blais. I have considered each of the factors set forth in section 3553(a), although I need not mention them.

        Gary Hirst's criminal life began with his association with Jason Galanis. Hirst agreed to be president of Jason Galanis's new company which became Gerova Financial, Ltd. ("Gerova"). Hirst appeared to have a clean reputation and was the perfect front man to serve as president and a director of Gerova. Galanis's role was behind the scenes because he was barred from serving as an officer or director of a public company under an order entered by Judge Sweet of this Court in 2007.

Galanis understood that Hirst's impeccable pedigree would look good to regulators and to the investing public.  But Hirst breached the trust that was placed in him by the investing public.  Hirst agreed with Galanis to transfer stock to a confederate of Galainis, Ymer Shahini, and Hirst knew that Shahini had no legitimate right to the stock, that the stock would be controlled in part by Galanis and would be sold to investors in the U.S.

Hirst failed to contemporaneously inform Gerova's CFO or Board about the stock transfer or its size and value.  When asked by the Gerova's CFO about the consulting agreement with Shahini, Hirst assured him that it was legitimate.   Galanis and others sold the shares to others in violation of SEC rules using corrupt investment advisors causing harm to unsuspecting investors.   Hirst knew from the very nature of the scheme that the Shahini shares would be dumped to U.S. investors, although he did not know the precise methodology of how that would be accomplished.  The Court accepts that that Hirst did not know all details of the conspiracy or the identities of all the co-conspirators.  He knew what he was asked to do and he readily participated and accepted $2.62 million paid to a corporation he controlled as compensation for his role in the crimes.

Prior to his criminal actions in this case, Hirst does not appear to have engaged in criminal conduct. He claims that he was exploited by Galanis because he had "psychological vulnerability and longing for the kind of passionate friendship that [Galanis] offered." (D. Sentencing Mem., p.3.)  Hirst is said to be "emotionally and socially immature" and "easily manipulated by others"   (Id.)  While these words are nicely phrased by the defendant's lawyers and experts, they provide no more of an excuse when offered by Hirst than they would be by a young man trying to explain why he join a conspiracy to distribute a controlled substance.   The Court accepts that Galanis manipulated Hirst and other participants in the scheme, including

Galanis's father and brother.  But Hirst was smart enough to know better and should have resisted.   He did not.

In primary and secondary school Hirst was smart, socially inept and self-reported an IQ of 160.  Much is made of the bullying he received as a child which, while true, does not excuse his crimes.  He attended college on a full scholarship.  He successfully completed medical school at University of Texas and law school at University of Miami.

There is a need for just punishment. While he did not practice law for a long period, his legal training gave him an enhanced understanding of the nature and consequences of his acts.

There is little need to protect the public from future crimes of this defendant. I doubt that Gary Hirst will reoffend because will never again be in a position to injure shareholders of a public company.

But there is a strong need to deter others from engaging in crimes of this type. 50% of all Americans with annual incomes ranging from $30,000 to $75,000 own stocks. [Gallup, April 20, 2016, http://www.gallup.com/poll/190883/half-americans-own-stocks-matching-record-low.aspx]    Knowledge that, if caught, a stock manipulator will face serious prison time deters this crime.

I have considered the Sentencing Guidelines, Policy Statements and official commentary of the United States Sentencing Commission. I have considered them in an advisory manner and recognize that I am not obligated to sentence within the Guidelines. I acknowledge variance discretion.  Defendant is at Total Offense Level 35 and Criminal History Category I.

There is a need to avoid unwarranted disparities among those convicted of similar crimes.  Jason Galanis whose role in this offense was that of mastermind and orchestrator of the

scheme received a sentence of principally 135 months imprisonment. Hirst, John Galanis and Derek Galanis each had roles in the offense that were secondary to that of Jason. Hirst role in the offense, apart from his role as a corporate officer, had some similarities to that of Derek Galanis. On the one hand, John Galanis and Derek Galanis, unlike Hirst, each had prior convictions. But it is also true that neither was an officer or director of a public company and each accepted responsibility for his crimes in a timely manner. Derek and John each received a sentences of principally 72 months imprisonment.

Gary Hirst is 65 years old; his life expectancy is 19.1 years; he has shown signs of memory and cognitive problems for which he has been prescribed Aricpet a drug used to treat symptoms of Alzheimer's disease. He is a good father to his daughter who has special needs. He did not appear to have committed his crimes to fund a lavish lifestyle. His proceeds from the crimes were used to pay down certain financial obligations to investors in a fund he controlled.

For all the foregoing reasons, I intend to impose a sentence of 60 months imprisonment on Counts 1 and 78 months on Counts 2, 3 and 4, all to run concurrently, 1 year supervised release on Counts 1 to 4 to run concurrently, waiver of the fine based upon limited assets and limited earning ability, impose restitution and forfeiture and impose a special assessment of $400.

The foregoing in my view is sufficient but not greater than necessary to achieve the purposes of section 3553(a).


SO ORDERED.

- 5 -

_____
P. Kevin Castel
United States District Judge

Dated:  New York, New York
        August 3, 2017